UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| CAROLYN F. MANSON,<br><br>    Plaintiff,<br><br>    v.<br><br>MICHAEL J. ASTRUE,<br>COMMISSIONER OF SOCIAL<br>SECURITY ADMINISTRATION,<br><br>    Defendant. | No. ED CV 07-1034-PLA<br><br>**MEMORANDUM OPINION AND ORDER** |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on August 24, 2007, seeking review of the Commissioner's denial of her applications for Disability Insurance Benefits and Supplemental Security Income. The parties filed Consents to proceed before the undersigned Magistrate Judge on September 11, 2007, and September 13, 2007. Pursuant to the Court's Order, the parties filed a Joint Stipulation on July 7, 2008, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## BACKGROUND

Plaintiff was born on December 12, 1951. [Administrative Record ("AR") at 64, 74, 469.] She completed two years of college [AR at 84], and has past relevant work experience as a library assistant, secretary, office assistant, and a bank teller. [AR at 86-91.]

On July 4, 2004, plaintiff filed her application for Disability Insurance Benefits, and on February 25, 2005, plaintiff protectively filed her application for Supplemental Security Income payments. [AR at 14, 39-40, 55, 64-66, 74-77, 469-71.] In both applications, plaintiff alleged that she has been disabled since January 2, 2002, due to depression, anxiety, emotional disorder, fibromyalgia, bipolar disorder, paranoia, high blood pressure, and liver problems. [AR at 64-66, 78-79, 469-71.] After her applications were denied initially and on reconsideration, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). [AR at 39-54.] A hearing was held on February 21, 2007, at which time plaintiff appeared with counsel and testified on her own behalf. [AR at 472-502.] A vocational expert also testified. [AR at 496-500.] On March 14, 2007, the ALJ determined that plaintiff was not disabled prior to December 12, 2006.[1] [AR at 10-21.] Plaintiff requested review of the hearing decision. [AR at 8.] When the Appeals Council denied plaintiff's request for review on June 20, 2007, the ALJ's decision became the final decision of the Commissioner. [AR at 5-7.] This action followed.

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

---

[1]  See fn. 5, infra.

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257. When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner. Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

## IV.

## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

**A.    THE FIVE-STEP EVALUATION PROCESS**

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Id. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or

equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that she is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie case of disability is established. The Commissioner then bears the burden of establishing that the claimant is not disabled, because she can perform other substantial gainful work available in the national economy. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

**B.   THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

In this case, at step one, the ALJ found that plaintiff had not engaged in any substantial gainful activity since the alleged onset date of the disability.[2] [AR at 16.] At step two, the ALJ concluded that plaintiff has the following "severe" impairments: depression and fibromyalgia. [Id.] At step three, the ALJ determined that plaintiff's impairments do not meet or equal any of the impairments in the Listing. [AR at 16.] The ALJ further found that plaintiff retained the residual functional capacity ("RFC")[3] to perform a narrowed range of light work.[4] Specifically, the ALJ found that plaintiff "can lift and/or carry 10 pounds frequently and 20 pounds occasionally. Out of

---

[2]   The ALJ determined that plaintiff "last met the insured status requirements of the Social Security Act on March 31, 2006." [AR at 16.]

[3]   RFC is what a claimant can still do despite existing exertional and nonexertional limitations. Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

[4]   Light work is defined as work involving "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" and requiring "a good deal of walking or standing" or "sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. §§ 404.1567(b) and 416.967(b).

an 8-hour period, she can stand and/or walk for 6 hours and sit for 2 hours. Nonexertional limitations include no working at heights or around dangerous machinery. She can occasionally climb, balance, stoop, kneel, crouch, and crawl. [Plaintiff] can occasionally keyboard. Mentally, she can perform simple, repetitive, entry level work working with objects rather than people. She cannot perform piece work that requires production quotas." [AR at 17.] At step four, the ALJ concluded that plaintiff was not capable of performing her past relevant work. [AR at 19-20.] At step five, the ALJ found, based on the vocational expert's testimony and application of the Medical-Vocational Guidelines as a framework, that there are a significant number of jobs in the national economy that plaintiff is capable of performing. [AR at 20-21.] Accordingly, the ALJ determined that plaintiff was not disabled prior to December 12, 2006.[5] [AR at 20.]

## V.

## THE ALJ'S DECISION

Plaintiff contends that the ALJ failed to: (1) properly consider the treating psychologist's clinical assessment; (2) properly consider the lay witness statements; (3) properly consider the State Agency physician's findings; and (4) properly determine the jobs that plaintiff is capable of performing in light of plaintiff's RFC. Joint Stipulation ("Joint Stip.") at 3. As set forth below, the Court agrees with plaintiff, in part, and remands the matter for further proceedings.

**TREATING PHYSICIAN'S OPINION**

In evaluating medical opinions, the case law and regulations distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining physicians). See 20 C.F.R. §§ 404.1502, 416.927; see also

---

[5] The ALJ determined that plaintiff was not under a disability within the meaning of the Social Security Act at any time through March 31, 2006. [AR at 21.] The ALJ concluded that plaintiff "became disabled" on December 12, 2006, when plaintiff's age category changed, and "continued to be disabled" through the date of the decision. [Id.]

Lester, 81 F.3d at 830. As a general rule, the opinions of treating physicians are given greater weight than those of other physicians, because treating physicians are employed to cure and therefore have a greater opportunity to know and observe the claimant. Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (citing Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987)). Although the treating physician's opinion is entitled to great deference, it is not necessarily conclusive as to the question of disability. Rodriguez v. Bowen, 876 F.2d 759, 761-62 (9th Cir. 1989).

Where the treating physician's opinion is uncontradicted, it may be rejected only for "clear and convincing" reasons. Lester, 81 F.3d at 830. Where the treating physician's opinion is contradicted by another physician, the ALJ may only reject the opinion of the treating physician if the ALJ provides specific and legitimate reasons for doing so that are based on substantial evidence in the record. See Lester, 81 F.3d at 830; see also 20 C.F.R. §§ 404.1527(d), 416.927(d) (requiring that Social Security Administration "always give good reasons in [the] notice of determination or decision for the weight [given to the] treating source's opinion"); Social Security Ruling[6] 96-2p ("the notice of the determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.").

An examining physician's opinion based on independent clinical findings that differ from the findings of a treating physician may constitute substantial evidence. Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007) ("Independent clinical findings can be either (1) diagnoses that differ from those offered by another physician and that are supported by substantial evidence, (citation omitted) or (2) findings based on objective medical tests that the treating physician has not herself considered." (citation omitted)). However, even if an examining physician's opinion constitutes

---

[6] Social Security Rulings ("SSR") do not have the force of law. Nevertheless, they "constitute Social Security Administration interpretations of the statute it administers and of its own regulations," and are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations." Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989).

substantial evidence, the treating physician's opinion is still entitled to deference.[7]  See id.; see also SSR 96-2p (a finding that a treating physician's opinion is not entitled to controlling weight does not mean that the opinion is rejected).

Finally, "[t]he opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician *or* a treating physician."  Lester, 81 F.3d at 831 (emphasis in original).  The opinion of a non-examining physician may serve as substantial evidence when it is consistent with other independent evidence in the record.  Id. at 830-31.  "A report of a non-examining, non-treating physician should be discounted and is not substantial evidence when contradicted by all other evidence in the record."  See Gallant v. Heckler, 753 F.2d 1450, 1454 (9th Cir. 1984) (quoting Millner v. Schweiker, 725 F.2d 243, 245 (4th Cir. 1984)).

Plaintiff argues that the ALJ failed to consider the treating psychologist's opinion.  Specifically, plaintiff asserts that the ALJ failed to provide specific and legitimate reasons for disregarding the opinion of plaintiff's treating psychologist, Dr. Elizabeth Tamoush.  Joint Stip. at 3-5.  As discussed below, the Court agrees with plaintiff.

On January 6, 2003, Dr. Tamoush conducted an evaluation of plaintiff and completed a Clinical Assessment form and a Diagnosis form.  [AR at 315-23.]  In the Clinical Assessment, Dr. Tamoush noted that plaintiff has concentration deficits and recent memory problems.  [AR at 321.]  In describing plaintiff's current depression problem, Dr. Tamoush indicated that plaintiff has a loss of interest in pleasurable activities, as well as a depressed mood and a poor memory.  [AR at 322.]  In the Diagnosis form completed in connection with the Clinical Assessment form, Dr. Tamoush

---

[7] "In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight."  SSR 96-2p.  In determining what weight to accord the opinion of the treating physician, the ALJ is instructed to consider the following factors: length of the treatment relationship and frequency of examination; nature and extent of the treatment relationship; the degree to which the opinion is supported by relevant medical evidence; consistency of the opinion with the record as a whole; specialization; and any other factors that tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(d)(2)-(6), 416.927(d)(2)-(6).

diagnosed plaintiff with major depressive disorder, recurrent, moderate, and assigned plaintiff a current Global Assessment of Functioning ("GAF") score of 51.[8]  [AR at 323.]

In the decision, in rejecting the opinion of one of plaintiff's treating physicians, Dr. Jeremiah Umakanthan, the ALJ references only some of Dr. Tamoush's findings in the Clinical Assessment form.[9] [AR at 18.] Specifically, the ALJ noted that during the initial mental status examination performed by Dr. Tamoush, plaintiff was cooperative, her speech was normal, her mood was sad, her affect was appropriate, her thought processes were relevant and coherent, she reported no auditory or visual hallucinations, her cognitive functioning was intact with no deficits, and her judgment was fair. [AR at 18.] The ALJ further noted that plaintiff "complained of 'at times' not remembering where she puts things or forgetting appointments." [Id.]

The ALJ's selective reliance on particular findings of Dr. Tamoush, without providing any explanation for such reliance, and his failure to accurately summarize Dr. Tamoush's findings, was error. The ALJ may not point to and discuss only those portions of the treatment record that favor his ultimate conclusion. See Gallant, 753 F.2d at 1456 (error for an ALJ to ignore or misstate the competent evidence in the record in order to justify his conclusion); see also Fiorello v. Heckler, 725 F.2d 174, 176 (2d Cir. 1983) (while the ALJ is not obligated to "reconcile explicitly every conflicting shred of medical testimony," he cannot simply selectively choose evidence in the record that supports his conclusions); Whitney v. Schweiker, 695 F.2d 784, 788 (7th Cir. 1982) ("[A]n ALJ must weigh all the evidence and may not ignore evidence that suggests an opposite conclusion.") (citation omitted); Day v. Weinberger, 522 F.2d 1154, 1156 (9th Cir. 1975) (an ALJ is not permitted

---

[8] A Global Assessment of Functioning score is the clinician's judgment of the individual's overall level of functioning. It is rated with respect only to psychological, social, and occupational functioning, without regard to impairments in functioning due to physical or environmental limitations. See American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV"), at 32 (4th Ed. 2000). A GAF score of 51-60 indicates "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." DSM-IV, at 34.

[9] The opinion of Dr. Umakanthan is not at issue here. However, the Court will discuss Dr. Umakanthan's opinion to the extent that such a discussion is necessary to the Court's analysis herein.

to reach a conclusion "simply by isolating a specific quantum of supporting evidence"). For instance, the ALJ in the decision did not expressly discuss Dr. Tamoush's findings that plaintiff suffered from concentration deficits, a depressed mood, and a poor memory. [AR at 321-22.] In fact, the ALJ misstated Dr. Tamoush's finding with respect to plaintiff's cognitive deficits by asserting that plaintiff's cognitive functioning was "intact with no deficits." [AR at 18.] Rather, in the Clinical Assessment form, plaintiff was noted as having "concentration deficits present." [AR at 321.] As such, the ALJ erred by failing to properly address "competent evidence" in the record.

Moreover, the ALJ's failure to completely consider and address the opinion of Dr. Tamoush undercuts his determination of plaintiff's RFC.[10] The RFC assessment must be made "based on all the relevant evidence in [the] case record." 20 C.F.R. §§ 404.1545, 416.945. Examples of the types of evidence required to be considered in making an RFC assessment include medical history, medical signs, laboratory findings, recorded observations, and medical source statements. See SSR 96-8p. The RFC assessment must always consider and address medical source opinions, and if the assessment conflicts with an opinion from a medical source, the ALJ must explain why the opinion was not adopted. See SSR 96-8p; see also Thompson v. Barnhart, 2006 WL 709795, at *13 (E.D. Pa. March 15, 2006) ("'Since it is apparent that the ALJ cannot reject evidence for no reason or for the wrong reason, an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper.'") (quoting Cotter v. Harris, 642 F.2d 700, 706-07 (3rd Cir. 1981)).

---

[10] Defendant argues that there was no error regarding Dr. Tamoush's opinion because (1) Dr. Tamoush conducted only an initial assessment, and thus her assessment was not meant to be an assessment of plaintiff's longitudinal functioning over time; and (2) the record does not indicate whether Dr. Tamoush treated plaintiff after the initial assessment. Joint Stip. at 5. While defendant's observations may be accurate, the ALJ in his decision did not present these reasons as a basis for disregarding Dr. Tamoush's findings. Indeed, the ALJ did not offer any reasons whatsoever for discounting the limitations found by Dr. Tamoush. As such, defendant's *post hoc* attempt to justify the ALJ's conclusion is not sufficient to cure the error. See Vista Hill Foundation, Inc. v. Heckler, 767 F.2d 556, 559 (9th Cir. 1985) (a reviewing court may affirm an administrative decision only on grounds articulated by the agency); see also Barbato v. Commissioner of Social Sec. Admin., 923 F. Supp. 1273, 1276 (C.D. Cal. 1996) (a court may remand if the decision of the ALJ as to a claimant's entitlement to benefits on its face does not adequately explain how a conclusion was reached, even if Social Security Administration can offer proper *post hoc* explanations for such unexplained conclusions).

"Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [claimant's] impairment(s) including [claimant's] symptoms, diagnosis and prognosis." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). It is the ALJ's duty to evaluate the medical opinions in the record and to explain the weight given to each medical opinion. See 20 C.F.R. §§ 404.1527(d), 416.927(d). Here, the ALJ should have discussed Dr. Tamoush's findings in the Clinical Assessment form and the Diagnosis form, and explained the weight he assigned to those findings. Specifically, Dr. Tamoush's findings that plaintiff had concentration deficits, memory problems, and a GAF score of 51,[11] and a State Agency physician's findings that plaintiff has moderate difficulties in maintaining concentration, persistence, or pace,[12] were not specifically rejected by the ALJ or included in plaintiff's RFC assessment. Further, in the Work Capacity Evaluation (Mental) completed by Dr. Umakanthan, plaintiff was noted as having extreme limitations in the ability to maintain attention and concentration for extended periods and in the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances.[13] [AR at 467.] In determining plaintiff's mental residual functional capacity, the ALJ found that plaintiff could perform simple, repetitive, entry level work, as long as the job involved working with objects rather than people, and could not

---

[11] Dr. Tamoush assessed plaintiff with a GAF score of 51 on January 6, 2003. Over ten months later on November 21, 2003, Dr. Umakanthan also assessed plaintiff with a GAF score of 51. [AR at 323.] Nevertheless, the ALJ in the decision failed to mention the fact that plaintiff was assigned a GAF score of 51 on two separate occasions by two different physicians.

[12] The ALJ in the decision gave "great weight" to the State Agency opinion concerning plaintiff's Physical Residual Functional Capacity, "since the physicians had an opportunity to review the entire record and their opinion is consistent with the substantial weight of evidence." [AR at 19.] Despite the State Agency physician's opportunity to also review the entire record concerning plaintiff's mental condition, the ALJ did not specifically cite or address the mental limitations noted by that State Agency physician in his determination of plaintiff's RFC. [AR at 198-211.]

[13] In the decision, the ALJ rejected the extreme limitations found by Dr. Umakanthan because the treating records did not reflect such limitations. [AR at 18.] While the ALJ may have properly disregarded Dr. Umakanthan's findings of extreme limitations as lacking supporting evidence, he did not provide any explanation for his failure to include a moderate limitation in the ability to maintain concentration, persistence and pace in plaintiff's RFC determination. [AR at 208, 321.]

perform piece work that requires production quotas. [AR at 17.] No other mental limitations were included by the ALJ in plaintiff's RFC assessment. Given the evidence that plaintiff has difficulties with memory, concentration, persistence and pace, the ALJ erred by failing to properly address Dr. Tamoush's findings in determining plaintiff's RFC.

For the foregoing reasons, remand is warranted.[14] On remand, the ALJ should fully consider Dr. Tamoush's findings, and specifically explain the weight he accords to those findings.[15]

## VI.
## REMAND FOR FURTHER PROCEEDINGS

As a general rule, remand is warranted where additional administrative proceedings could remedy defects in the Commissioner's decision. See Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir.), cert. denied, 531 U.S. 1038 (2000); Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984). In this case, remand is appropriate to properly consider Dr. Tamoush's findings. The ALJ is instructed to take whatever further action is deemed appropriate and consistent with this decision.

/
/
/

---

[14] As the ALJ's consideration on remand of Dr. Tamoush's findings may impact the other issues raised by plaintiff in the Joint Stipulation, the Court will exercise its discretion not to address those issues in this Order. Rather, upon remand, the ALJ should re-examine the lay witness statements, the State Agency physician's findings, and the jobs that plaintiff is capable of performing given plaintiff's RFC.

[15] If a treating physician's opinion on the nature and severity of a plaintiff's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with other substantial evidence in the record, the ALJ must give the treating physician's opinion controlling weight. See 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). The ALJ may only give less weight to a treating physician's opinion if the ALJ provides sufficient specific and legitimate reasons for discounting the opinion. See SSR 96-2p; see also 20 C.F.R. §§ 404.1527(d), 416.927(d); Lester, 81 F.3d at 830; Orn, 495 F.3d at 632-33. An ALJ can meet the requisite specific and legitimate standard "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998).

1      Accordingly, **IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

DATED: September 24, 2008

                                              PAUL L. ABRAMS
                                  UNITED STATES MAGISTRATE JUDGE